**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JORGE ALEJANDRO ROJAS,

     *Plaintiff,*

  vs.

SARAH GODLEWSKI and SARAH FOR
WISCONSIN INC.,

     *Defendants.*

Case No. 1:22-cv-06218

Judge Virginia M. Kendall
Magistrate Judge Gabriel A. Fuentes

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)**

Jorge Rojas alleges that Defendants[1] violated the Telephone Consumer Protection Act

("TCPA") by sending unsolicited text messages to his cell phone using an automatic telephone

dialing system (often referred to as an "ATDS" or "autodialer").  However, his complaint fails to

plausibly allege the use of an autodialer under *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167

(2021), since an autodialer "must have the capacity either to store a telephone number using a

random or sequential generator or to produce a telephone number using a random or sequential

number generator."  Despite this exacting requirement of what constitutes an autodialer, Plaintiff's

recent, persistent TCPA litigation has made it implausible that Plaintiff's cell phone number was

contacted via an autodialer.  As detailed further below, since July 2022, Plaintiff has filed thirteen

TCPA cases against Democratic candidates and organizations for calls/messages during the same

time period as the above-captioned case.  Consequently, for the reasons discussed herein,

---

[1] Mr. Rojas voluntarily dismissed former defendant ActBlue LLC, on December 2, 2022, *see* Notice of Voluntary Dismissal, Dkt. No. 7, so "Defendants" refer to Ms. Godlewski and Sarah for Wisconsin Inc. and the caption has been updated accordingly.

Plaintiff's claim that he was contacted over a dozen times, at random, via an autodialer is implausible and his complaint should be dismissed with prejudice.

## ALLEGATIONS OF FACT

On Election Day 2022, Mr. Rojas sued Sarah Godlewski, Sarah for Wisconsin Inc., and ActBlue LLC, under 47 U.S.C. § 227, relying on the Court's federal question subject matter jurisdiction. *See* Compl. ¶¶ 4, 7. Ms. Godlewski was a Democratic candidate from Wisconsin running in 2022 for the United States Senate. *See id.* ¶ 29.

Mr. Rojas "is the account holder and ["sole[]"] customary user of his phone number," which he identifies as "(424) XXX-1582," a number associated with southern California. *See id.* ¶¶ 20–22.[2] Since January 18, 2008, this number has been registered on the federal Do Not Call Registry in order "to obtain solitude from invasive and harassing telemarketing calls," which would prevent him "from using his phone for legitimate purposes." *See id.* ¶¶ 23–24.

While Mr. Rojas was within the jurisdiction of the Northern District of Illinois, he received a handful of text messages, despite having neither donated to Ms. Godlewski's Senate campaign nor provided consent to receive text messages. *See id.* ¶¶ 25–26, 28, 31, 33, 38, 43. Specifically:

- On May 15, 2022, at 9:01 p.m. central time, Mr. Rojas received an undescribed "image" and the following message from phone number 844-701-1774:

---

[2] The Court may take judicial notice of the fact that a telephone number's area code is associated with a specific geographic area. *See e.g., Rhines v. Jackson*, No. 2020-cv-68, 2022 WL 356871, at *3 n.6 (D.V.I. Feb. 7, 2022) (taking judicial notice that an area code was associated with a specific geographic location); *Orsi v. Falah bin Zayed bin Sultan Al-Nahyan*, No. 11-cv-10451, 2012 WL 4469120, at *7 n.6 (D. Mass. Sept. 25, 2012) (same).

The text identified above stated "My name is Sarah Godlewski. 👋 I'm running for US Senate to defeat Ron Johnson in Wisconsin and expand our Democratic majority. The most recent head-to-head poll shows I'm the only Democrat who can beat him, and The Washington Post said I'm "the best chance to rid the Senate of Ron Johnson." But I can't do it alone - and the stakes of our race are higher than ever right now. Please watch my short video to learn more about me and join our grassroots campaign: sarahforwi.co/video Txt BLUE to join, STOP to end.""

- On June 20, 2022, at 5:13 p.m. central time, Mr. Rojas again received an undescribed "image" and the following message from 855-625-0475:

The text identified above stated "It's official: Sarah Godlewski is on the ballot for US Senate in WI! Here's why she's our best shot to defeat Ron Johnson: ☑ She's the only Democrat polling ahead of him right now ☑ The Washington Post called her "the best chance" to defeat him ☑ She's already won 2 statewide elections in WI ☑ EMILY's List endorsed Sarah can flip this seat for Democrats + expand our majority, but we'll need a lot of grassroots support from across the country to win. We're humbly asking you to chip in just $3 to help. It all adds up if everyone is pitching in. Here's the link: sarahforwi.co/contribute Text STOP to quit"

See id. ¶¶ 26–29, 31–34.[3] These messages (referred to as the "Challenged Text Messages") were sent "[t]o generate support for [Defendants'] campaigns and causes," as "Defendants had an interest in the outcome of the election," and were not sent for "emergency purposes." See id. ¶¶ 39, 41, 60. Receipt of these messages caused Mr. Rojas "frustration, annoyance, irritation and a sense that his privacy ha[d] been invaded by Defendants." See id. ¶ 51. Mr. Rojas did not respond in any way to the first text message sent in May, but he did send "a STOP request" to one of the numbers that texted him at 5:34 p.m. on June 20, 2022,[4] which prompted an "acknowledgement

---

[3] Mr. Rojas also contends that "[u]pon information and belief," he "received additional calls from Defendants and their affiliates," which he "will identify" through discovery. See Compl. ¶¶ 48, 66.

[4] While the Complaint suggests that Mr. Rojas texted the 844-phone number, common sense indicates that he texted "STOP" to the 855-phone number, since the May 2022 text(s) were sent at 9:01 p.m., so he could not have *responded*

*footnote continued on next page…*

of the stop." *See id.* ¶¶ 30, 37.  Mr. Rojas did not receive any later text messages from Defendants after requesting that they stop.  *See generally id.*

Mr. Rojas alleges that the Challenged Text Messages were sent "en masse" via an autodialer, as indicated by (1) the "automated messages"; (2) the invitations to text "STOP" to either "quit" or "end"; and (3) their "impersonal and generic nature."  *See id.* ¶¶ 39, 40, 43, 49.  He also alleges that Defendants sent the Challenged Text Messages willfully and knowingly via an autodialer, despite not having his consent.  *See id.* ¶¶ 44–46.  Accordingly, he contends that Defendants violated the TCPA intentionally, so as to create "a pattern and/or practice of failing to comply with the TCPA."  *Id.* ¶¶ 52–53, 63–64.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim "challenges the legal sufficiency of the complaint."  *Wheaton Theatre, LLC v. First Am. Title Ins. Co.*, 354 F. Supp. 3d 904, 906 (N.D. Ill. 2018) (Kendall, J.).  Faced with a motion under Rule 12(b)(6), "[t]he Court reads the complaint and assesses its plausibility as a whole," while "accept[ing] as true all of the well-pleaded facts" and "draw[ing] all reasonable inferences in favor of the plaintiff."  *Id.* at 906–07 (internal quotation marks and citation omitted).  In order to survive such a motion, a "complaint must allege facts which, when taken as true, 'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'"  *Id.* at 907 (citation omitted).  As the Seventh Circuit has instructed, "the plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 676 (7th Cir. 2016) (citation omitted).

---

three hours earlier that "same day."  Instead, the "STOP" message appears to have been sent in response to the June 20, 2022 message received approximately twenty minutes earlier.  *See* Compl. ¶¶ 26, 34, 37.

While a court's consideration of a Rule 12(b)(6) motion is usually limited to the pleadings, *see* Fed. R. Civ. P. 12(d), "a narrow exception" permits a court to "take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment," thereby allowing "courts to avoid unnecessary proceedings when an undisputed fact in the public record establishes that the plaintiff cannot satisfy the 12(b)(6) standard." *Limestone Dev. Corp. v. Vill. of Lemont*, 473 F. Supp. 2d 858, 867 (N.D. Ill. 2007) (Kendall, J.). Specifically,

> A court may take judicial notice of an adjudicative fact that is both "not subject to reasonable dispute" and either: (1) "generally known within the territorial jurisdiction of the trial court" or (2) "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Generally, court records are appropriate subjects for judicial notice because they are sources "whose accuracy cannot reasonably be questioned."

*Id.* at 867–68 (citations omitted). Courts are thus able to take judicial notice of proceedings in the same and other courts. *Id.* at 868.

## ARGUMENT

To state a claim under the TCPA, a plaintiff must allege: (1) the defendant called or sent a text message to a cell phone number; (2) using an autodialer; (3) without the recipient's express prior consent. *See Perez v. Quicken Loans, Inc.*, No. 19-cv-2072, 2020 WL 1491145, at *2 (N.D. Ill. Mar. 27, 2020) (elements); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 460–61 (7th Cir. 2020) (text messages qualify as calls under the TCPA). As some courts have recognized, the Seventh Circuit's *Gadelhak* decision "'rais[ed]' the 'standards for pleading and proving a claim under [TCPA] section 227(b)(1)[(A)](iii), especially in regard to the [autodialer] element.'" *Watts v. Emergency Twenty Four, Inc.*, No. 20-cv-1820, 2021 WL 2529613, at *4 (N.D. Ill. June 21, 2021) (quoting *Perez*, 2020 WL 1491145, at *2).

> "While it is true, as many courts have observed, that a plaintiff should not be required to plead specific facts as to the technical specifications of the type of call system employed by the defendant,

> it also cannot be the case that every barebones TCPA claim can
> survive a motion to dismiss" with conclusory allegations about
> unwanted calls.

*Id.* (quoting *Perez*, 2020 WL 1491145, at *3). A complaint must "raise[] the ATDS claim from speculative to plausible. To claim that [a defendant] *might* have been us[ing] a device that *might* have the capacity to randomly or sequentially generate numbers is clearly speculation." *Mosley v. Gen. Revenue Corp.*, No. 20-cv-01012, 2020 WL 4060767, at *4 (C.D. Ill. July 20, 2020). Concluding otherwise "would make huge swaths of otherwise innocuous phone calls [and text messages] at risk of litigation." *Id.* at *3.

As explained below, Mr. Rojas cannot plausibly allege that Defendants used an autodialer to send the Challenged Text Messages and his complaint should be dismissed with prejudice.

**I.     Mr. Rojas cannot plausibly allege use of an autodialer in light of his serial litigation against Democratic political candidates and organizations.**

*A.     Mr. Rojas conclusorily alleges Defendants used an autodialer without alleging the equipment was able to dial and "store or produce telephone numbers to be called, using a random or sequential number generator."*

Under the TCPA, an "automatic telephone dialing system" is defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *See* 47 U.S.C. § 227(a)(1). As the Supreme Court has explained: "To qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Facebook, Inc.*, 141 S. Ct. at 1167. Put another way, "a necessary feature of an autodialer under § 227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called." *Id.* at 1173.

Nowhere in his complaint does Mr. Rojas contend that Defendants relied on an autodialer with the required capacity. Instead, he merely alleges that Defendants used an "automatic telephone dialing system" or "an 'automatic telephone dialing system' and/or a pre-recorded voice as defined by the TCPA." *See* Compl. ¶¶ 40, 45, 49, 71. These are conclusory—not well-pleaded—allegations and should be disregarded at this stage. The only facts alleged to support the possibility that Defendants used an autodialer are: (1) the Challenged Text Messages were "automated messages" sent "en masse"; (2) the inclusion of invitations to text "STOP" to either "quit" or "end" the receipt of messages; and (3) the Challenged Text Messages' "impersonal and generic nature." *See id.* ¶¶ 39, 40, 43, 49. However, as explained below, given the judicially noticeable factual context, these vague factual allegations do not "'nudge' his claim 'across the line from conceivable to plausible.'" *Watts*, 2021 WL 2529613, at *4 (citation omitted); *see also Friedman v. Massage Envy Franchising, LLC*, No. 12-cv-02962, 2013 WL 3026641, at *2 (S.D. Cal. June 13, 2013) ("The text messages are generic and impersonal, as Plaintiffs assert, but that is not enough to make the claims plausible. It is just as conceivable that the text messages were done by hand, or not using an ATDS." (citation omitted)).

**B.** ***Mr. Rojas cannot plausibly allege that his phone number was generated randomly after filing eleven other TCPA cases against Democratic candidates and organizations since July 2022.***

In his complaint, Mr. Rojas notes that "he has existing pending actions against ACTBLUE LLC," but that "the[] texts in this complaint are concerning Sarah Godlewski, while the texts in the other cases are concerning other political candidates." *See* Compl. ¶ 42. This assertion does not reveal the extent of his TCPA litigation against political candidates and organizations. In fact, since July 17, 2022, Mr. Rojas has filed at least fifteen TCPA cases against political candidates

and organizations: fourteen were filed in the Northern District of Illinois,[5] while the remaining one

was filed in the Central District of California.[6] Thirteen, including the present litigation, were

filed against Democratic candidates or organizations,[7] while the remaining two TCPA cases were

against a conservative political candidate or conservative political action committee. Of all Mr.

Rojas' political cases, the present case was the second-to-last case filed. The court records

reflecting the litigation commenced by Mr. Rojas are public records of which the Court can take

judicial notice.

Viewed through the lens of judicial experience and common sense, it is simply not

plausible that Mr. Rojas' cell phone number was randomly or sequentially generated over a dozen

times by Democratic campaigns and organizations. *Cf. Snow v. Gen. Elec. Co.*, No. 18-cv-511,

2019 WL 2500407, at *2, *4. (E.D.N.C. June 14, 2019) (dismissing complaint with prejudice

because "it is not reasonable to infer that the messages were sent with equipment 'using a random

or sequential number generator'" since plaintiff alleged defendants sent her "in excess of 2900 text

---

[5] *Rojas v. Everyaction, Inc.*, No. 22-cv-3712 Doc. # 1 (N.D. Ill. July 17, 2022); *Rojas v. Hart*, No. 22-cv-5372 Doc. # 1 (N.D. Ill. Sept. 30, 2022); *Rojas v. O'Brien*, No. 22-cv-5498 Doc. # 1 (N.D. Ill. Oct. 7, 2022); *Rojas v. Our Revolution*, No. 22-cv-5632 Doc. # 1 (N.D. Ill. Oct. 14, 2022); *Rojas v. Dream Big PAC*, No. 22-cv-5638 Doc. # 7 (N.D. Ill. Oct. 14, 2022); *Rojas v. Warnock*, No. 22-cv-5742 Doc. # 1 (N.D. Ill. Oct. 18, 2022); *Rojas v. Nancy Pelosi for Cong.*, No. 22-cv-5868 Doc. # 1 (N.D. Ill. Oct. 24, 2022); *Rojas v. DCCC d/b/a Democratic Cong. Campaign Comm.*, No. 22-cv-5940 Doc. # 1 (N.D. Ill. Oct. 26, 2022); *Rojas v. Beto for Texas*, No. 22-cv-5998 Doc. # 1 (N.D. Ill. Oct. 31, 2022); *Rojas v. Voters First Victory Fund*, No. 22-cv-6060 Doc. # 1 (N.D. Ill. Nov. 2, 2022); *Rojas v. Cal. Democratic Party*, No. 22-cv-6149 Doc. # 8 (N.D. Ill. Nov. 4, 2022); *Rojas v. Val Demings for U.S. Senate, Inc.*, No. 22-cv-6158 Doc. # 1 (N.D. Ill. Nov. 7, 2022); *Rojas v. Godlewski*, No. 22-cv-6218 Doc. # 1 (N.D. Ill. Nov. 8, 2022); *Rojas v. Citizens for Giannoulias*, No. 22-cv-7282 Doc. # 1 (N.D. Ill. Dec. 24, 2022).

[6] *Rojas v. Hancock*, No. 22-cv-7622 Doc. # 1 (C.D. Cal. Oct. 19, 2022).

[7] Mr. Rojas sued ActBlue LLC—which, as previously noted, he has already voluntarily dismissed in this case—in six other cases in the Northern District of Illinois between July 17, 2022 and November 7, 2022. *See Rojas v. Everyaction, Inc.*, No. 22-cv-3712 Doc. # 15 (N.D. Ill. July 17, 2022); *Rojas v. Warnock*, No. 22-cv-5742 Doc. # 10 (N.D. Ill. Oct. 18, 2022); *Rojas v. Nancy Pelosi for Cong.*, No. 22-cv-5868 Doc. # 8 (N.D. Ill. Oct. 24, 2022); *Rojas v. DCCC d/b/a Democratic Cong. Campaign Comm.*, No. 22-cv-5940 Doc. # 9 (N.D. Ill. Oct. 26, 2022); *Rojas v. Beto for Texas*, No. 22-cv-5998 Doc. No. 6 (N.D. Ill. Oct. 31, 2022); *Rojas v. Val Demings for U.S. Senate, Inc.*, No. 22-cv-6158 Doc. No. 13 (N.D. Ill. Nov. 7, 2022).

messages" containing "technical information or alerts that were clearly intended for another recipient," namely "the prior owner or holder of her reassigned number").

Instead, given the volume of litigation initiated by Mr. Rojas against Democratic candidates and organizations, the only plausible conclusion is that Mr. Rojas is on a list of Democratic or Democratic-leaning potential voters and, thus, his cell phone number was not randomly generated. *Cf. Watts*, 2021 WL 2529613, at *3 (dismissing, under *Duguid*, complaint where plaintiff alleged that his cell phone was called repeatedly by an alarm company every time an alarm was tripped at his former employer using "dialing equipment" that was "capable of contacting thousands of people a day" and that stored his and others' phone numbers because the complaint failed to allege that defendant "randomly generated his number to call"); *Jovanovic v. SRP Invs., LLC*, No. 21-cv-00393, 2021 WL 4198163, at *4 (D. Ariz. Sept. 15, 2021) ("Targeted messages 'weigh against an inference that ATDS was used.'" (citation omitted)).

This conclusion is bolstered by the sharp political polarization of our country. It is not plausible that sophisticated political campaigns would generate and text random phone numbers (over a dozen times) seeking "[t]o generate support for [Defendants'] campaigns and causes." Compl. ¶ 39. *Cf. Mosley*, 2020 WL 4060767, at *4 (concluding it was not plausible for a debt collection company to "use a system that randomly and sequentially generates phone numbers"). Accordingly, the complaint does not—and cannot—plausibly allege that Defendants used an autodialer to send the Challenged Text Messages.[8]

---

[8] For the reasons discussed above, the context of this case is distinguishable from *Jara v. Redbox Automated Retail, LLC*, No. 19-cv-04532, 2020 WL 433869 (N.D. Ill. Jan. 28, 2020) (Kendall, J.), in which the Court denied a motion to dismiss a TCPA suit based on the plaintiff's allegations that, "if proven, [would] constitute circumstantial evidence that Defendant utilized an ATDS to send the text messages to Plaintiff." *Id.* at *2.

## CONCLUSION

As explained above, Mr. Rojas cannot plausibly allege that Defendants used an autodialer to randomly generate his cell phone number.  Accordingly, the Court should dismiss the Complaint with prejudice.

Dated January 17, 2023

/s/ Scott A. Nehls
Scott A. Nehls (#6290318)
Fuchs & Roselli, Ltd.
200 S. Wacker, Suite 600
Chicago, IL 60606
Phone: 312-651-2400
Fax: 312-651-2499
snehls@frltd.com

Bryan J. Cahill (*Pro Hac Vice Pending*)
State Bar No. 1055439
Deborah P. Machalow (*Pro Hac Vice Pending*)
State Bar No. 1118587
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719
Phone:  608-257-3911
Fax:  608-257-0609
bcahill@gklaw.com
dmachalow@gklaw.com

*Attorneys for Sarah Godlewski and Sarah for Wisconsin Inc.*

28549364.8

10